AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 3:19 mj 272
CELLULAR TELEPHONE ASSIGNED )
CALL NUMBER (937) 422-6829 )
)

FILED
ANGEL
CLERK OF COURT
2019 MAY 14 PM 2:12
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WESTERN DIV. DAYTON

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A - This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 / 846 | distribution of controlled substance / conspiracy to distribute controlled substance |
| 21 USC 843(b) | use of a communication facility, in facilitating the commission of any act or acts |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.
☑ Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA JOSHUA D. HILDERBRAN, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5-14-19

_____
*Judge's signature*

City and state: DAYTON, OHIO        SHARON L. OVINGTON  U.S. MAGISTRATE JUDGE
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF CELLULAR TELEPHONE ASSIGNED CALL NUMBER (937) 422-6829 | Case No. _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Joshua D. Hilderbran, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (937) 422-6829, subscribed to Davion Knight with an address of 2316 Bracken Place, Dayton, Ohio 45459 (the "**Target Cell Phone**"), whose service provider is Sprint, a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, KS 66251. The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act, *see* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent with the United States Drug Enforcement Administration ("DEA"), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 21 U.S.C. § 878. I have been employed as a Special Agent by the DEA since January 2011, and I am currently assigned to the

DEA Dayton Resident Office. In 2011, I completed the Basic Agent Training Program at the DEA Justice Training Center in Quantico, Virginia, during which I received instruction on topics including, among other things, narcotics identification, surveillance techniques, methods of operation of narcotics traffickers, law, evidence handling, undercover operations, and current trends and patterns involving the distribution of narcotics. Prior to my employment with the DEA, I served as an Officer/Counter Sniper with the United States Secret Service, Uniform Division, in Washington D.C. from June 2007 to January 2011.

4. During my career with the DEA, I have participated in multiple controlled-substances investigations, including by acting in an undercover capacity, supervising the use of confidential sources, conducting physical surveillance, and monitoring and reviewing recorded conversations of drug traffickers. I have participated in multiple Title III investigations by monitoring lines, supervising monitors, and conducting surveillance to substantiate the Title III interceptions. Through my training and experience, including on-the-job discussions with other law enforcement agents and cooperating suspects, I am familiar with the activities of drug smugglers and drug-trafficking distribution networks. For example, based on my training and experience, I know that drug traffickers frequently use cellular devices to communicate with their customers, suppliers, and/or associates and that drug traffickers frequently carry such devices on their persons in order to set up and conduct drug transactions.

5. I have also become familiar coded terminology utilized by drug-trafficking organizations to disguise their illegal activities and the manner in which they conduct these illegal activities. For example, based on my training and experience and my conversations with other officers, I am aware that "boy" and "him" are coded terms for fentanyl and/or heroin, "girl" is a coded term for cocaine, and "Chrissy" and "ice" are coded terms for methamphetamine.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The communications and conversations described in this affidavit are summarized and have not been recounted in full or verbatim.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841, 843(b), and 846 have been committed, are being committed, and will be committed by Davion'tae Knight ("KNIGHT") and others known and unknown. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

8. Detectives from the Ohio Tactical Crime Suppression Unit ("TCSU") and I are conducting an ongoing narcotics investigation into KNIGHT and Jerrontae McCOMB ("McCOMB") relating to the sale of controlled substances, including fentanyl and cocaine, in the greater Dayton, Ohio area.

9. Since February 2019, TCSU has used an undercover detective (the "UC") to conduct approximately five controlled narcotics purchases from KNIGHT and/or McCOMB involving gram quantities of suspected narcotics. The UC arranged for and negotiated these controlled narcotics purchases from KNIGHT and/or McCOMB by repeatedly communicating with someone believed to be KNIGHT at the number associated with the **Target Cell Phone**. Law enforcement officers have confirmed, through first-hand observations or conversations with KNIGHT, that KNIGHT was present at each of the approximately five controlled narcotics

purchases arranged through communications with someone using the **Target Cell Phone**.

10. For example, in early April 2019, the UC communicated with someone believed to be KNIGHT at the number associated with the **Target Cell Phone** to arrange for a controlled narcotics purchase of fentanyl, which ultimately occurred on or about April 5, 2019. During the course of the telephonic communications leading up to this controlled narcotics purchase, the UC and KNIGHT agreed, in substance and in part, on a price of $160 for approximately two grams of fentanyl and established a meet location in the area of Delaware and Richmond Avenues in Dayton, Ohio.

11. On or about April 5, 2019, the UC drove to the meet location. At the location, which TCSU detectives were surveilling, a Silver 2006 Pontic Grand Prix parked door to door with the UC's vehicle. The UC identified McCOMB as the driver of the Pontiac. An unknown black male was in the front passenger seat of the Pontiac, and a third person, whom the UC believed to be KNIGHT, was in the back. During the meet, McCOMB provided the UC with an amount of suspected fentanyl for the price of $160.

12. Similarly, beginning on or about April 29, 2019, the UC communicated with someone believed to be KNIGHT at the number associated with the **Target Cell Phone** to arrange for a controlled narcotics purchase of fentanyl, which ultimately occurred on or about May 1, 2019. During the course of the telephonic communications leading up to this controlled purchase, the UC and KNIGHT agreed, in substance and in part, on a price of $200 for approximately 2.5 grams of fentanyl and established a meet location in the area of the apartments at 2082 Imperial Road in West Carrollton, Ohio.

13. In one recorded telephone conversation on or about May 1, 2019, the UC, in substance and in part, stated a desired quantity of "him" (*i.e.*, fentanyl and/or heroin) and also asked KNIGHT whether he had "Chrissy" (*i.e.*, methamphetamine). KNIGHT responded, in

substance and in part, that he did not have any methamphetamine and would need to ask his "partner."

14. On or about May 1, 2019, the UC drove to the meet location. At the location, which TCSU detectives and I were surveilling, a gray 2006 Acura four-door car arrived and parked approximately two spaces away from the UC's vehicle. An unknown black female was driving the Acura, and KNIGHT was in the front passenger seat. The driver remained in the Acura as KNIGHT exited the car and entered the front passenger side of the UC's vehicle. KNIGHT provided the UC with a clear plastic baggie containing a white substance believed to be fentanyl for the price of $200.

15. While together in the UC's vehicle, the UC and KNIGHT engaged in a conversation, which was recorded. During the conversation, the UC stated, in substance and in part, that he wanted to increase his distribution business and would like to purchase "boy" (*i.e.*, fentanyl and/or heroin) and "Chrissy" in the near future. KNIGHT responded, in substance and in part, that KNIGHT would need to "link up" with his "dude" and that his "dude" works with the "ice" (*i.e.*, methamphetamine). KNIGHT further stated, in substance and in part, that KNIGHT works with the "boy" and the "girl" (*i.e.*, cocaine). Additionally, KNIGHT appeared to indicate, in substance and in part, that KNIGHT had been in the car with his "dude" during the controlled narcotics purchase on or about April 5, 2019. Based on KNIGHT's statements to the UC, including KNIGHT's description of his "dude," I believe KNIGHT to have been referring to McCOMB.

16. The suspected narcotics obtained by the UC from KNIGHT and/or McCOMB during the approximately five controlled narcotics purchases have been submitted to the Ohio Bureau of Criminal Investigation for analysis. According to the BCI, the suspected narcotics obtained by the UC from KNIGHT during the first two controlled narcotics purchases, which occurred on or about February 2, 2019 and on or about March 4, 2019, were: (1) approximarely

5

0.88 grams of a white powder containing cocaine, and (2) approximately 2.80 grams of a white substance containing fentanyl. Results are pending for the suspected narcotics obtained by the UC from KNIGHT and/or McCOMB during the subsequent controlled narcotics purchases, including those occurring on or about April 5 and May 1, 2019.

17. In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data, and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (*i.e.*, antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (*i.e.*, faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

18. Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on Sprint's network or with such other reference points as may be reasonably available.

19. Based on my training and experience, I know that Sprint can collect cell-site data about the **Target Cell Phone**. Similarly, I know, based on my training and experience, that for

each communication a cellular device makes, its wireless service provider typically can determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Sprint typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

20. Based on my training and experience, I know that the location information described in paragraphs 17 through 19 will assist law enforcement in identifying, or confirming the identify of, the user(s) of the **Target Cell Phone**. Additionally, the location information may also lead law enforcement to the locations at which KNIGHT or any other user of the **Target Cell Phone** is storing or selling illegal drugs. Additionally, this information will assist law enforcement in observing potential meetings between KNIGHT or any other user of the **Target Cell Phone** and other individuals with whom he is trafficking narcotics, *i.e.*, co-conspirators.

## AUTHORIZATION REQUEST

21. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

22. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates,

and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

23. I further request that the Court direct Sprint to disclose to the Government any information described in Attachment B that is within the possession, custody, or control of Sprint. I also request that the Court direct Sprint to furnish the Government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the **Target Cell Phone** on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the Government. The Government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

24. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

//
//
//
//
//
//
//

25. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Joshua D. Hilderbran
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on May 14th, 2019

SHARON L. OVINGTON
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (937) 422-6829, subscribed to Davion Knight with an address of 2316 Bracken Place, Dayton, Ohio 45459 (the "**Target Cell Phone**"), whose wireless service provider is Sprint, a company headquartered at 6480 Sprint Parkway, Overland Park, KS 66251.

2. Records and information associated with the **Target Cell Phone** that are within the possession, custody, or control of Sprint, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

## Particular Things To Be Seized

### I. Information To Be Disclosed by the Provider

All information about the location of **Target Cell Phone** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of **Target Cell Phone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint, Sprint is required to disclose the Location Information to the Government. In addition, Sprint must furnish the Government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the **Target Cell Phone** on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the Government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

II. **Information To Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841, 843, and 846 involving KNIGHT, McCOMB, and/or other unidentified subject(s).